IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No 19-cv-03011-RBJ

CRAIG COMMUNAL, a Colorado resident,

    Plaintiff,

v.

CITY OF WESTMINSTER, a Colorado home rule municipality,

    Defendant.

---

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendant City of Westminster's ("Westminster") motion for summary judgment (ECF No. 57). For the reasons discussed below, the motion is DENIED.

## I.  BACKGROUND

Mr. Communal was employed as a police officer in the City of Westminster from March 22, 2004 until his termination on September 19, 2018. ECF No. 1. The focus of his suit is an injury to Mr. Communal's left shoulder on October 17, 2017. ECF No. 63-2 at 106–07. Mr. Communal tore his rotator cuff chasing a burglary suspect. *Id*. at 107. He filed for worker's compensation and received treatment from several doctors. *Id*. at 107–109. Ultimately, on June 7, 2018 Mr. Communal underwent surgery to repair his injured shoulder. *Id*. at 109. Following this surgery, he took six weeks of leave to recover from the surgery. *Id*. Mr. Communal returned for limited duties on July 18, 2018. ECF No. 14 at ¶44. He was limited to five-hour desk duty shifts. *Id*.

On July 21, 2018 Mr. Communal went on an outing to a lake near his home, where he was surveilled by a third-party hired by Westminster. ECF No. 63-1 at 30–31. He was also surveilled at his home and when he travelled in vehicles. *Id*. This surveillance was requested by Westminster's Human Resources Department ("HR") because HR had a question about Mr. Communal's workers compensation claim. ECF No. 63-1 at 30. The surveillance was an attempt to witness Mr. Communal engaging in activities contrary to what he was reporting to the doctors and HR. *Id.*

On July 26, 2018, an internal investigation was initiated. *Id*. at 38–40. Mr. Communal's supervisor, Commander Edna Hendershot, requested an investigation after she learned of an interaction between Broomfield police and Mr. Communal—he had left his intoxicated then-wife at the King Sooper's in Broomfield, and officers called him to request that he come pick her up. Commander Hendershot spoke to Mr. Communal and discovered that there had been other instances where he had had police interactions and not told his supervisors. *Id*. at 40–41. Commander Hendershot's investigation resulted in Deputy Chief Reeves requesting an internal affairs ("IA") investigation. *Id*. at 41. That investigation was conducted by Sergeant Matt Trenka. *Id*. Mr. Communal was suspended at the beginning of the investigation.[1]

---

[1] Because this Court must construe all evidence in favor of Mr. Communal at this stage of litigation, this motion proceeds as if Mr. Communal was suspended on July 26, 2018, at the beginning of the IA investigation. However, the record before this Court is not clear on that point. Westminster asserts that Mr. Communal was not suspended at all. ECF No. 69 at 4. In so claiming, however, Westminster cites to a page of Mr. Communal's deposition that was not included in the excerpts submitted to this Court. *See id.* (citing page 83 of Exhibit B, ECF No. 57-2). Westminster's contention that Mr. Communal was not suspended during the IA investigation is contradicted by Mr. Communal's claim to have been suspended and by the "Findings of Fact, Conclusions of Law, and Recommendation" of the Personnel Board, which states that "based on the initial findings of Commander Hendershot, Chief Deputy Reeves suspended Mr. Communal's employment." ECF No. 57-4 at ¶59. Neither source describes when during the IA investigation the suspension occurs, so this Court construes the evidence in the light most favorable to Mr. Communal and proceeds as if he were suspended on the first day of the investigation.

Sergeant Trenka found that there were fifteen police contacts between Mr. Communal and various police departments from 2016–2018.  ECF No. 57-6 at 2.  Seven of those incidents were vehicle related conduct, including two road rage incidents.  *Id*.  The remainder of the incidents were domestic, always involving his then-wife and sometimes involving his adult daughter.  *Id*.  Those incidents are fully outlined in the memorandum from Chief Carlson to Mr. Communal regarding disciplinary action, ECF No. 57-6 at 2, and discussed in more detail in the "Findings of Fact, Conclusions of Law., and Recommendation" written by the Personnel Board ("PB") affirming Chief Carlson's decision to terminate Mr. Communal's employment with the city, ECF No. 57-4.

On September 19, 2018 Westminster terminated Mr. Communal's employment based on the results of the IA investigation.  *Id*. at 5.  Mr. Communal appealed that decision to the PB, which affirmed that decision on June 20, 2019.  *See id*.  The decision was then affirmed again by Westminster's city manager.  ECF No. 63 at 7.  Mr. Communal subsequently filed this suit on October 22, 2019, alleging that he was terminated because of his shoulder disability in violation of the Americans with Disabilities Act (ADA).

## II.     STANDARD OF REVIEW

A motion for summary judgment should be granted where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is material if it is essential to the proper disposition of the claim.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The party moving for summary judgment bears the burden of showing a lack of evidence to support the nonmoving

party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When determining a motion for summary judgment, the Court must view the record and draw all reasonable inferences from the record in the light most favorable to the nonmoving party.  *Adler*, 144 F.3d at 670.

### III.   ANALYSIS

Westminster argues that it is entitled to summary judgment on two grounds.  First, it asserts that plaintiff failed to raise a genuine dispute of material fact regarding causation, a critical element of a prima facie case.  Second, it argues that even if he did enough to establish a prima facie case, he did not raise a genuine dispute of material fact as to whether his termination was pretextual.

When a plaintiff seeks to make a claim under the ADA using circumstantial evidence, a Court analyzes the claim using the *McDonnell Douglas*[2] burden-shifting framework.  *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018).  At step one of *McDonnell Douglas*, the plaintiff must make a prima facie case of discrimination.  "To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate (1) that he is disabled within the meaning of the ADA, (2) that he is qualified—with or without reasonable accommodation; and (3) that he was discriminated against because of his disability."  *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 748 (10th Cir.1999) (internal quotation marks omitted).

For the third element of the prima facie case, causation, plaintiff must present "some affirmative evidence that disability was a determining factor in the employer's decision."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  While the burden of production is on the plaintiff to produce that evidence, the case law is clear that that burden "is not onerous."  *Id*.  The Tenth Circuit has held that temporal proximity between requests for accommodations

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

and adverse employment actions could raise an inference of discrimination for the third element of the prima facie case. *Butler,* 172 F.3d at 749 (holding that the plaintiff in an ADA case had established the third element of the prima facie case by showing a temporal proximity between plaintiff's request for an accommodation and a decline in work evaluations); *see also Tadlock v. Marshall Cty. HMA, LLC*, 603 F. App'x 693, 702–03 (10th Cir. 2015) (unpublished) (holding that temporal proximity between a request for accommodation and an adverse employment action can serve as evidence of discrimination for purposes of both the causation element of the prima facie case and to show pretext).

If a plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer can articulate such a reason, the burden shifts back to the plaintiff to show that the proffered reason is in fact a pretext. *Id*. at 804. "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Lincoln*, 900 F.3d at 1193 (quoting *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017)). The showing of pretext is frequently accomplished by "revealing weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *DePaula*, 859 F.3d at 970. As noted above, pretext can be shown by a temporal proximity. *Tadlock*, 603 F. App'x at 702–703.

A. **Prima Facie Case.**

For the purposes of this motion, Westminster has chosen not to contest that it is a covered entity or that Mr. Communal was a disabled individual qualified for protection under the ADA because of his shoulder injury in 2017. ECF No. 57 at 10. Further, it concedes that there is no

dispute that Mr. Communal suffered an adverse employment action: he was terminated. *Id*. As a result, the only prima facie case element at issue in this motion is whether Mr. Communal was terminated *because* of his disability. As indicated above, while plaintiff must present some evidence that disability was a determining factor in the decision, it is not a heavy burden at this stage. Simply put, there must be some evidence from an inference of causation could be drawn.

Westminster argues that to show that disability was a cause of the adverse action plaintiff must show that "but-for" the disability the action would not have taken place. That does not appear to be the present law in the Tenth Circuit. *See Dennis v. Fitzsimons,* 850 F. App'x 598, 602 n.4 (10th Cir. 2021) (unpublished) ("After *Gross [v. FBL Fin. Servs, Inc.,* 557 U.S. 167 (2009) and *[Univ. of Tex. Sw. Med. Cntr. v.] Nassar,* other circuits determined that courts must evaluate ADA claims under a "but-for" standard. . . . But we have not yet made such a determination."). Moreover, for present purposes, it does not matter whether the standard is "but-for" or "determining factor" (which, frankly, do not strike me as significantly different). Temporal proximity can be evidence, though not necessarily determinative evidence, of causation under either standard. Take, as an example, a hypothetical employee requests an accommodation, but one day later he is fired. The temporal proximity would not necessarily decide the case, but it should be sufficient to get him over the summary judgment hump. Thus, without deciding whether a but-for standard should be applied, I find that temporal proximity could still be sufficient to establish the causation prong in this case.

The parties also disagree on the timing of Mr. Communal's protected action. Westminster argues that Mr. Communal engaged in a protected action almost a year before Westminster took any adverse employment action against him. It asserts that Mr. Communal's only protected action was his injury and the related filing of a workman's compensation claim,

both of which occurred in October of 2017.  But, while filing a worker's compensation claim would qualify as protected activity, it is not the only such activity in this case.  "Acceptance of an accommodation is protected activity."  *Praseuth v. Newell-Rubbermaid, Inc.*, 219 F. Supp. 2d 1157, 1192 (D. Kan. 2002), *aff'd sub nom. Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245 (10th Cir. 2005).  Mr. Communal argues that the protected action he took was accepting an accommodation from Westminster in the form of leave following his surgery and limited duties on his return to work.  He returned to work on July 18, 2018.  ECF No. 63-2 at 107.  Westminster began an IA investigation into his conduct on July 26, 2018.  ECF 57-4 at ¶59.

I conclude that a reasonable factfinder could find that the temporal proximity between Mr. Communal's protected action of accepting an accommodation and the adverse employment action of being suspended created an inference of discrimination.  Mr. Communal accepted an accommodation of six weeks of leave following his surgery beginning on the date of his surgery, June 7, 2018.  ECF No. 63-2 at 109.  He accepted another accommodation when he returned to work only on a limited basis, working five-hour desk shifts beginning on July 18, 2018.  ECF No. 14 at ¶44.  Both acceptances of these accommodations occurred within two months of the first adverse employment decision: the suspension of Mr. Communal.  Mr. Communal was suspended only eight days after he accepted the second accommodation.

Whether Mr. Communal's causation argument is a compelling or even a strong argument is not the issue for the Court to decide.  Interpreting the evidence in the light most favorable to Mr. Communal, a reasonable factfinder could find, even under a but-for standard, that the close temporal proximity between these events gives rise to an inference of discrimination.  As genuine disputes of material fact remain, summary judgment is inappropriate on that issue.

B. <u>Pretext.</u>

Westminster alleges that it had a legitimate, nondiscriminatory reason for its termination of Mr. Communal. It alleges that it fired him because he "made repeated efforts to use his position as a police officer to avoid traffic citations and involvement in police investigations." ECF No. 57 at 16. That is a legitimate and nondiscriminatory reason to have fired Mr. Communal.

Mr. Communal responds that this reason is pretextual for several reasons: (1) he was subjected to surveillance regarding his claim of disability that other officers were not subjected to; (2) the number of police contact incidents was exaggerated; and (3) the punishment he received for his alleged infractions was not consistent with the punishments given to officers in similar situations. *See* ECF No. 63.

Once again, whether plaintiff's pretext argument is correct is not the issue before the Court. That is the merits issue that only a jury can decide. The issue is whether, reading the evidence in the light most favorable to Mr. Communal, a reasonable jury could find that the proffered reasons were pretextual, i.e., whether there is a genuine dispute of material fact about it.

Mr. Communal begins by pointing to his having been surveilled by a third party at the direction of the HR. ECF No. 63-1 at 29. Commander Hendershot admitted to being unaware of any other occasion when a Westminster officer was surveilled, other than earlier surveillance of Mr. Communal in 2016 following a different injury. *Id*. The surveillance was directly related to Mr. Communal's protected activity—HR okayed the surveillance because it believed that his actual level of disability might be different than what he had reported to his doctors and superiors. While details of the surveillance are unknown to the Court, it is uncontested that Mr. Communal was surveilled during a trip to a lake on July 21, 2018. *See* ECF No. 63-17. That

was two days after Mr. Communal was cleared for limited work.  But the surveillance apparently was conducted at the request of HR rather than anyone in the Police Department and ultimately no wrongdoing on Mr. Communal's part was found.  The fact that HR believed he might have been lying about the extent of his injuries does not make Westminster's proffered reason for Mr. Communal's termination less likely to be true.

Mr. Communal next argues that many of the police contacts were because of his then-wife's actions, and that there have been no other instances where an officer has been terminated because of the actions of a relative.  There have only been two circumstances where officers were disciplined because of problems with family members.  ECF No. 63 at 11.  Further, he argues that Westminster should not have included minor traffic stops in is calculation of his police interactions, and that other officers in similar situations received far less punishments than termination.  Westminster provided only two examples where officers had IA investigations opened because of traffic violations.  *Id*.  Neither was fired.  *Id*.

These arguments largely miss the point.  These police interactions were concerning to Westminster primarily because Mr. Communal appeared to be using his position as a police officer to avoid the negative consequences that often accompany police encounters, and because he failed to report these encounters to his superiors on the force.  *See, e.g.*, ECF No. 57 at 3–4.  The IA investigator found fifteen police encounters between 2016 and 2018.  After questioning the officers on the scene in those interactions, the investigator determined that Mr. Communal had told the officers in all but one encounter that he was a police officer, in some of the encounters he did so to avoid negative consequences.  ECF No. 57-6 at 2.  The comparison to other officers who did or did not receive punishment in similar circumstances is inapposite—those officers apparently were in trouble because of the underlying situations that had caused the

police encounter (like driving under the influence), not for their conduct during and after the encounters. Mr. Communal's conduct in his interactions with officers between 2016 and 2018 are troubling and should have troubled Westminster.

However, there is still some room for argument that the number of police interactions cited by Westminster as reasons for the termination was inflated. Regarding the vehicle stops, Mr. Communal presents a reason for his stating that he was a police officer: he wanted to let the officers who had stopped him know that he had a weapon in the car. ECF No. 63 at 4. Mr. Communal also states that it is common practice for Westminster police officers to share that they are officers if they have a weapon in the car. *Id*. at 4.

The PB found this explanation unpersuasive because Mr. Communal was not consistent. During one stop, Mr. Communal told the stopping officer that he was a police officer, but that he did not have his weapon in the car because he was on the way to a Bronco game. During another stop, he told the stopping officer that he was an officer but made no mention of his weapon. ECF No. 57-4 at ¶¶77–81. Even with his inconsistent reporting of the weapon, however, there is a genuine dispute of material fact as to whether Mr. Communal's identifying himself as a police officer would have been a valid, non-pretextual grounds for termination. He states that what he did was a common practice for police officers. If Mr. Communal's actions constituted a common practice, a reasonable factfinder could ask whether and why Mr. Communal is the only officer who has been disciplined for this behavior. If the factfinder found that Mr. Communal was singled out, a jury could potentially infer that he was actually fired because of his disability.

Further, the PB report identified twelve police contacts involving Mr. Communal between 2016 and 2018. ECF No. 57-4 at 2. Five of those police contacts involved Mr. Communal's then-wife. *Id*. at 2–4. Of those five incidents, Mr. Communal did not identify

himself as an officer in three of them. *Id*. In one of those incidents, Mr. Communal did not respond to officer's attempts to contact him. *Id*. at 4. That leaves two contacts involving his wife where Mr. Communal cooperated with contacting officers and did not request special treatment because he was a police officer. This accords with plaintiff's argument that Westminster inflated the number of troubling police contacts he had as a pretext for firing him.

Westminster also argues that while Chief Carlson knew about Mr. Communal's disability, the PB and city manager "reached their decisions without ever hearing about Mr. Communal's shoulder injury," so their decision to affirm the termination could not have been based on Mr. Communal's disability. ECF No. 69 at 9. They argue that their legitimate, non-discriminatory reason for firing Mr. Communal cannot be pretextual because for an officer to be terminated, three different parties must sign off on the termination.

The tripartite nature of termination process for Westminster police officers does not insulate Westminster from liability in this instance. If the legitimate, nondiscriminatory reason given by Westminster is pretextual for any one of these three decisionmakers, and Mr. Communal can make out his prima facie case, Mr. Communal could succeed on his claim. If, for example, Chief Carlson's real reason for deciding to terminate Mr. Communal was because of his disability, the fact that the PB and city manager had a different reason for affirming the decision does not alleviate the wrong. It does not necessarily follow that because the PB and City Manager had little or no knowledge of Mr. Communal's medical issues, Westminster's legitimate, nondiscriminatory reason for firing him cannot be pretextual.

## ORDER

The critical point that cannot be forgotten is that summary judgment may only be granted when a party has produced no admissible evidence that could support a verdict in his or its favor.

This Court, frankly, does not find the plaintiff's case compelling, but that is not the Court's role. I find that this is a case that will have to be heard and decided by a jury. For the reasons above defendant's motion for summary judgment, ECF No. 57, is DENIED.

DATED this 18th day of January, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge